S. Peter Serrano
United States Attorney
Eastern District of Washington
Laurel J. Holland
Assistant United States Attorney
Post Office Box 21
Richland, WA, 99352
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEC 0 2 2025

SEAN F. McAVOY, CLERK
_____DEPUTY
RICHLAND, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

Victor Martin Lara-Lopez
(a/k/a "Victor M. Lara-Lopez"),

Defendant.

Case No.: 4:25-CR-6027-MKD

Plea Agreement

Fed. R. Crim. P. 11(c)(1)(C)

Plaintiff United States of America, by and through S. Peter Serrano, United States Attorney the Eastern District of Washington, and Laurel J. Holland, Assistant United States Attorney for the Eastern District of Washington, and Defendant Victor Martin Lara-Lopez ("Defendant"), both individually and by and through Defendant's counsel, Alex B. Hernandez, III, agree to the following Plea Agreement.

1.    Guilty Pleas and Maximum Statutory Penalties

Defendant agrees to enter pleas of guilty to Counts 1 and 2 of the Indictment filed on July 23, 2025, which charges Defendant with Assault on a Federal Officer, in violation of 18 U.S.C. § 111(a)(1), (b), a Class C felony.

Defendant understands that the following potential penalties apply:

PLEA AGREEMENT - 1

1        a.    a term of imprisonment of not more than 20 years;

2        b.    a term of supervised release of not more than three (3) years;

3        c.    a fine of up to $250,000;

4        d.    restitution; and

5        e.    a $100 special penalty assessment.

6     2.    <u>Supervised Release</u>

7 Defendant understands that if Defendant violates any condition of

8 Defendant's supervised release, the Court may revoke Defendant's term of

9 supervised release, and require Defendant to serve in prison all or part of the term

10 of supervised release authorized by statute for the offense that resulted in such term

11 of supervised release without credit for time previously served on post release

12 supervision, up to the following terms:

13        a.    5 years in prison if the offense that resulted in the term of

14               Supervised Release is a class A felony,

15        b.    3 years in prison if the offense that resulted in the term of

16               Supervised Release is a class B felony, and/or

17        c.    2 years in prison if the offense that resulted in the term of

18               Supervised Release is a class C felony.

19 Accordingly, Defendant understands that if Defendant commits one or more

20 violations of supervised release, Defendant could serve a total term of

21 incarceration greater than the maximum sentence authorized by statute for

22 Defendant's offense or offenses of conviction.

23     3.    <u>The Court is Not a Party to this Plea Agreement</u>

24 The Court is not a party to this Plea Agreement and may accept or reject it.

25 Defendant acknowledges that no promises of any type have been made to

26 Defendant with respect to the sentence the Court will impose in this matter.

27 Defendant understands the following:

28        a.    sentencing is a matter solely within the discretion of the Court;

b.   the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c.   the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.   the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.   the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.   Defendant understands that this Plea Agreement contains sentencing recommendations pursuant to Fed. R. Crim. P. 11(c)(1)(C). As a result, Defendant may withdraw from this Plea Agreement if the Court imposes a harsher sentence than agreed upon.

4.   <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

a.   pleading guilty in this case may have immigration consequences;

b.   a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.   removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.   no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

PLEA AGREEMENT - 3

1    Defendant affirms that Defendant is knowingly, intelligently, and voluntarily
2    pleading guilty as set forth in this Plea Agreement, regardless of any immigration
3    consequences that Defendant's guilty plea may entail.

4    5.    Waiver of Constitutional Rights

5    Defendant understands that by entering this guilty plea, Defendant is
6    knowingly and voluntarily waiving certain constitutional rights, including the
7    following:

8              a.    the right to a jury trial;
9              b.    the right to see, hear and question the witnesses;
10             c.    the right to remain silent at trial;
11             d.    the right to testify at trial; and
12             e.    the right to compel witnesses to testify.

13    While Defendant is waiving certain constitutional rights, Defendant
14    understands that Defendant retains the right to be assisted by an attorney through
15    the sentencing proceedings in this case and any direct appeal of Defendant's
16    conviction and sentence, and that an attorney will be appointed at no cost if
17    Defendant cannot afford to hire an attorney.

18    Defendant understands and agrees that any defense motions currently
19    pending before the Court are mooted by this Plea Agreement, and Defendant
20    expressly waives Defendant's right to bring any additional pretrial motions.

21    6.    Elements of the Offense

22    The United States and Defendant agree that in order to convict Defendant of
23    Assault on a Federal Officer, in violation of 18 U.S.C. § 111(a)(1), (b), the United
24    States would have to prove the following beyond a reasonable doubt.

25    *Count 1- Assault on a Federal Officer*

26             a.    *First*, on June 13, 2025, within the Eastern District of
27                   Washington, Defendant forcibly assaulted Immigration and
28                   Customs Enforcement (ICE) Deportation Officer C.C.;

PLEA AGREEMENT - 4

b.    *Second*, Defendant did so while Deportation Officer C.C. was engaged in, or on account of her official duties; and

c.    *Third*, Defendant used a deadly or dangerous weapon or inflicted bodily injury.

*Count 2- Assault on a Federal Officer*

a.    *First*, on June 13, 2025, within the Eastern District of Washington, Defendant forcibly assaulted Immigration and Customs Enforcement (ICE) Deportation Officer K.R.;

b.    *Second*, Defendant did so while Deportation Officer K.R. was engaged in, or on account of his official duties; and

c.    *Third*, Defendant used a deadly or dangerous weapon or inflicted bodily injury.

7.    Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing.

On the morning of June 13, 2025, Immigration and Customs Enforcement (ICE) Deportation Officers (DOs) K.R. and C.C. were conducting surveillance in the area of 133 S. Elm Street, Pasco, Washington. They believed this to be a possible address for Victor Martin Lara-Lopez, Defendant, who had an outstanding administrative warrant for Arrest of an Alien.

At approximately 5 a.m., DOs K.R. and C.C. observed a white Ford F-350 pick-up truck known to be registered to, and driven by, Defendant, park across the

PLEA AGREEMENT - 5

1 street from the residence. The truck had dual rear wheels and a distinctive black
2 smokestack in the truck bed. DOs K.R. and C.C. activated the emergency lights on
3 their respective government issued vehicles. DO K.R. pulled in behind
4 Defendant's vehicle while DO C.C. pulled in front of Defendant's vehicle at an
5 angle to prevent Defendant from driving away.

6      DOs K.R. and C.C. exited their vehicles and approached the front driver's
7 side window of the F-350. Both DO C.C. and DO K.R. were wearing ICE-issued
8 ballistic vests with prominent "POLICE" patches on the front and back. DO K.R.
9 also had an ICE badge patch on the front of his vest.

10      DO K.R. instructed Defendant, the driver of the vehicle, to roll down the
11 window. Defendant rolled the window halfway down. DO K.R. immediately
12 recognized the driver as Defendant from Defendant's driver's license photograph.
13 DO K.R. asked Defendant to turn the vehicle off because its diesel engine was loud
14 and made conversation difficult. Defendant refused to turn off the vehicle. DO
15 K.R. asked Defendant his name and if he could provide identification, but
16 Defendant refused. DO C.C. then spoke to Defendant in Spanish and asked for his
17 name. Defendant replied in Spanish, "Why do you need my name?" DO C.C. again
18 asked Defendant in Spanish for his name or his identification; Defendant replied in
19 Spanish, "You don't need my name". DO C.C. asked Defendant in Spanish if his
20 name was Victor Lara Lopez, and his eyes became wide and his head started to
21 dart around. DO C.C. informed Defendant in Spanish that she and DO K.R. had a
22 warrant for his arrest and asked him to step out of the vehicle. Defendant asked to
23 see the warrant first. DO C.C. said she would show him once he stepped out of the
24 vehicle.

25      Defendant attempted to roll up the window. DO C.C. stepped onto the
26 running board of the vehicle and attempted to keep the window down. Defendant
27 took the vehicle out of park, placed it into reverse, and started to back up. DO C.C.
28 reached through the window and extracted the keys from the ignition, but the

PLEA AGREEMENT - 6

1   vehicle did not turn off. Both DO C.C. and DO K.R. struggled with Defendant
2   through the driver's side window, which was half closed, to try to gain control of
3   Defendant's hands and the steering wheel.

4        After the vehicle had traveled backward approximately one foot, Defendant
5   shifted the truck into drive and began to drive forward. DOs C.C. and K.R. were
6   both on the running board of the truck and had to jump backward to avoid being
7   crushed between the F-350 and DO C.C.'s vehicle. Both DOs expressed fear of
8   imminent harm by Defendant and his vehicle. As Defendant traveled forward, he
9   veered onto the sidewalk to the right, hitting DO C.C.'s government issued vehicle,
10  pulling its front bumper off completely. Defendant then fled the scene in his
11  vehicle. DOs C.C. and K.R. remained at the scene and did not pursue Defendant.
12  Instead, they contacted local law enforcement and made a report.

13       Later that day, significant bruising appeared on D.O. K.R.'s left arm, above
14  his elbow. The bruising was in the area where D.O. K.R.'s arm was in the partially
15  opened window of the F-350 as Defendant drove off with D.O. K.R. on the
16  running board. Similarly, that afternoon, D.O. C.C. began to experience pain,
17  stiffening, and loss of mobility in her left shoulder after the altercation. She also
18  said that this was consistent with her left arm being in the window of the F-350 as
19  it drove away.

20       A federal complaint was obtained for Defendant later that day. Despite
21  efforts by law enforcement to locate Defendant, he was not apprehended until July
22  15, 2025. An off duty Homeland Security Investigations (HSI)/United States
23  Marshalls U.S. Task Force officer (TFO) was driving home when he observed
24  Defendant's distinctive F-350 on the roadway. The TFO was aware of the
25  outstanding federal arrest warrant and a Washington State Department of
26  Corrections warrant for Defendant. The TFO called the vehicle into dispatch and
27  confirmed Defendant's warrants.

28

PLEA AGREEMENT - 7

1    A traffic stop was initiated by Walla Walla County and Washington State
2    Patrol officers. Defendant, a female, and the female's minor son were located in
3    the vehicle. Defendant initially refused to exit the vehicle, but ultimately did so.
4    Defendant is a registered sex offender in Washington state due to a conviction for
5    Child Molestation in the Second Degree with the Aggravating Factor of Position of
6    Trust in 2022. Defendant was on supervision with the Washington State
7    Department of Corrections at the time of the instant offenses.

8    ICE obtained estimates from two repairs shops for the damage caused by
9    Defendant to DO C.C.'s government issued vehicle. Both estimates were over
10    $10,000.

11    Defendant stipulates and agrees that, on June 13, 2025, Defendant forcibly
12    assaulted both DO C.C. and D.O. K.R., while both D.O. C.C. and D.O. K.R. were
13    engaged in their official duties as Deportation Officers with ICE. Further,
14    Defendant stipulates that Defendant both used his vehicle as a deadly or dangerous
15    weapon and inflicted bodily injury upon both D.O. C.C. and D.O. K.R.

16    8.    The United States' Agreements

17    The United States Attorney's Office for the Eastern District of Washington
18    agrees that at the time of sentencing, the United States will move to dismiss Count
19    3 of the Indictment filed on July 23, 2025, which charges Defendant with
20    Depredation Against Government Property, in violation of 18 U.S.C. § 1361.

21    The United States Attorney's Office for the Eastern District of Washington
22    agrees not to bring additional charges against Defendant based on information in
23    its possession at the time of this Plea Agreement that arise from conduct that is
24    either charged in the Indictment or identified in discovery produced in this case,
25    unless Defendant breaches this Plea Agreement before sentencing.

26    9.    United States Sentencing Guidelines Calculations

27    Defendant understands and acknowledges that the United States Sentencing
28    Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine

PLEA AGREEMENT - 8

1  Defendant's advisory range at the time of sentencing, pursuant to the Guidelines.

2  The United States and Defendant agree to the following Guidelines calculations.

3          a.    <u>Base Offense Level and Special Offense Characteristics</u>

4       The United States and Defendant make no agreement as to the applicable

5  base offense level or special offense characteristics.

6          b.    <u>Acceptance of Responsibility</u>

7       The United States will recommend that Defendant receive a downward

8  adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if

9  Defendant does the following:

10            i.       accepts this Plea Agreement;

11            ii.      enters a guilty plea at the first Court hearing that takes

12                       place after the United States offers this Plea Agreement;

13            iii.    demonstrates recognition and affirmative acceptance of

14                       Defendant's personal responsibility for Defendant's

15                       criminal conduct;

16            iv.    provides complete and accurate information during the

17                       sentencing process; and

18            v.     does not commit any obstructive conduct.

19       The United States and Defendant agree that at its option and on written

20  notice to Defendant, the United States may elect not to recommend a reduction for

21  acceptance of responsibility if, prior to the imposition of sentence, Defendant is

22  charged with, or convicted of, any criminal offense, or if Defendant tests positive

23  for any controlled substance.

24          c.    <u>Agreements Regarding Representations to the Court</u>

25       The United States has a duty of candor to the tribunal.  If the United States

26  and Defendant do not agree on the appropriate length of incarceration, the

27  appropriate length or applicable terms of supervised release, and/or the correct

28  guidelines calculations, variances, departures, and/or enhancements, the United

PLEA AGREEMENT - 9

1 States reserves the right to respond to any and all arguments made by Defendant,
2 on any bases the United States deems appropriate, at all stages of this criminal
3 case.

4       Defendant may make any arguments it deems appropriate, at all stages of
5 this criminal case.

6       With regard to all briefing, submissions, and hearings in this criminal case,
7 the United States and Defendant agree to the following provisions:

8                i.        The United States and Defendant may each respond to
9                         any questions from the Court or United States Probation
10                         Office;

11               ii.       The United States and Defendant may each supplement
12                         the facts under consideration by the Court by providing
13                         information the United States or Defendant deems
14                         relevant;

15              iii.     The United States and Defendant may each present and
16                         argue any additional facts that the United States or
17                         Defendant believe are relevant to the Sentencing
18                         Guidelines computation or sentencing;

19              iv.     The United States and Defendant may each present and
20                         argue information that may already be known to the
21                         Court, including information contained in the
22                         Presentence Investigation Report;

23               v.       The United States and Defendant may each respond to
24                         any arguments presented by the other;

25              vi.     In order to support the United States' sentencing
26                         recommendation as set forth herein, the United States
27                         may oppose and argue against any defense argument or
28                         any recommendation for any sentence lower than the

PLEA AGREEMENT - 10

1    sentence recommended by the United States on any basis,
2    including arguments for a lower offense level, a lower
3    criminal history calculation, the application or non-
4    application of any sentencing enhancement or departure,
5    and/or any variance from the Guidelines range as
6    calculated by the Court;
7    vii.    In order to support the defense sentencing
8    recommendation as set forth herein, Defendant may
9    oppose and argue against any argument by the United
10    States, or any recommendation for any sentence higher
11    than the sentence recommended by the defense on any
12    basis, including arguments for a higher offense level, a
13    higher criminal history calculation, the application or
14    non-application of any sentencing enhancement or
15    departure, and/or any variance from the Guidelines range
16    as calculated by the Court;
17    viii.    The United States may make any sentencing arguments
18    the United States deems appropriate so long as they are
19    consistent with this Plea Agreement, including arguments
20    arising from Defendant's uncharged conduct, conduct set
21    forth in charges that will be dismissed pursuant to this
22    Plea Agreement, and Defendant's relevant conduct; and
23    ix.    Defendant may make any sentencing arguments
24    consistent with this Plea Agreement Defendant deems
25    appropriate.
26    d.    <u>No Other Agreements</u>
27    The United States and Defendant have no other agreements regarding the
28    Guidelines or the application of any Guidelines enhancements, departures, or

PLEA AGREEMENT - 11

1  variances.

2           e.    Criminal History

3           The United States and Defendant have no agreement and make no

4  representations about Defendant's criminal history category, which will be

5  determined by the Court after the United States Probation Office prepares and

6  discloses a Presentence Investigative Report.

7           10.    Incarceration

8           Defendant acknowledges that this Plea Agreement is entered pursuant to

9  Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)").  Pursuant to

10  Rule 11(c)(1)(C), the United States and Defendant agree to recommend a sentence

11  of between 12 months plus one day and 24 months in custody, to be followed by a

12  term of Supervised Release.  Although the United States and Defendant agree to

13  make these recommendations to the Court pursuant to Rule 11(c)(1)(C), Defendant

14  acknowledges that no promises of any type have been made to Defendant with

15  respect to the sentence the Court will ultimately impose.

16           Defendant understands that Defendant may withdraw from this Plea

17  Agreement if the Court imposes a term of imprisonment of greater than 24 months

18  or indicates its intent to do so.  Defendant also understands that the United States

19  may withdraw from this Plea Agreement if the Court imposes a term of

20  imprisonment of less than 12 months plus one day or indicates its intent to do so.

21           The United States and Defendant acknowledge that the imposition of any

22  fine, restitution, or term or conditions of Supervised Release are not part of the

23  Rule 11(c)(1)(C) nature of this Plea Agreement; that the United States and

24  Defendant are free to make any recommendations they deem appropriate as to the

25  imposition of fines, restitution, or term or conditions of Supervised Release; and

26  that the Court will exercise its discretion in this regard.  The United States and

27  Defendant acknowledge that the Court's decisions regarding the imposition of

28  fines, restitution, or term or conditions of Supervised Release will not provide

1    bases for Defendant to withdraw Defendant's guilty plea or withdraw from this
2    Rule 11(c)(1)(C) Plea Agreement.

3        Defendant acknowledges that if either the United States or Defendant
4    successfully withdraws from this Plea Agreement, the Plea Agreement becomes a
5    nullity, and the United States is no longer bound by any representations within it.
6    At the time of Defendant's original sentencing in the District Court, the United
7    States agrees to make a sentencing recommendation to the Court that is consistent
8    with this Plea Agreement.  The United States' agreement to make such a
9    recommendation is limited exclusively to the time of Defendant's original
10    sentencing in the District Court.  The United States' agreement to make such a
11    recommendation does not prohibit or limit in any way the United States' ability to
12    argue for or against any future sentencing modification that takes place after
13    Defendant's original sentencing in the District Court, whether that modification
14    consists of an amendment to the Guidelines, a change to a statutory minimum or
15    maximum sentence, any form of compassionate release, any violation of
16    Supervised Release, or any other modification that is known or unknown to the
17    parties at the time of Defendant's original criminal sentencing.  In this Plea
18    Agreement, the United States makes no promises or representations about what
19    positions the United States will take or recommendations the United States will
20    make in any proceeding that occurs after Defendant's original sentencing in the
21    District Court.

22        11.    Supervised Release

23        The United States and Defendant each agree to recommend 3 years of
24    supervised release.  Defendant agrees that the Court's decision regarding the
25    conditions of Defendant's Supervised Release is final and non-appealable; that is,
26    even if Defendant is unhappy with the conditions of Supervised Release ordered by
27    the Court, that will not be a basis for Defendant to withdraw Defendant's guilty

28

PLEA AGREEMENT - 13

plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

        a.      The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

        b.      Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

        c.      Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

12.   <u>Criminal Fine</u>

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13.   <u>Mandatory Special Penalty Assessment</u>

Defendant agrees to pay the $200 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

PLEA AGREEMENT - 14

14.  <u>Restitution</u>

The United States and Defendant agree that restitution is appropriate and mandatory, without regard to Defendant's economic situation, to identifiable victims who have suffered physical injury or pecuniary loss, pursuant to 18 U.S.C. §§ 3663, 3663A, 3664.

Pursuant to 18 U.S.C. § 3663(a)(3), Defendant voluntarily agrees to pay restitution for all losses caused by Defendant's individual conduct, in exchange for the United States not bringing additional potential charges, regardless of whether counts associated with such losses will be dismissed as part of this Plea Agreement. With respect to restitution, the United States and Defendant agree to the following:

a.  <u>Restitution Amount and Interest</u>

The United States and Defendant stipulate and agree that the Court should order restitution in an amount of $10,305.81, and that interest on this restitution amount, if any, should be waived.

b.  <u>Payments</u>

To the extent restitution is ordered, the United States and Defendant agree that the Court will set a restitution payment schedule based on Defendant's financial circumstances.  18 U.S.C. § 3664(f)(2), (3)(A).  Regardless, Defendant agrees to pay not less than 10% of Defendant's net monthly income towards restitution.

c.  <u>Treasury Offset Program and Collection</u>

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies.

If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

PLEA AGREEMENT - 15

1    Defendant understands that the United States may, notwithstanding the

2    Court-imposed payment schedule, pursue other avenues to ensure the restitution

3    obligation is satisfied, including, but not limited to, garnishment of available funds,

4    wages, or assets.  18 U.S.C. §§ 3572, 3613, and 3664(m).

5    Nothing in this acknowledgment shall be construed to limit Defendant's

6    ability to assert any specifically identified exemptions as provided by law, except

7    as set forth in this Plea Agreement.

8    Until Defendant's fine and restitution obligations are paid in full, Defendant

9    agrees fully to disclose all assets in which Defendant has any interest or over

10   which Defendant exercises control, directly or indirectly, including those held by a

11   spouse, nominee or third party.

12   Until Defendant's fine and restitution obligations are paid in full, Defendant

13   agrees to provide waivers, consents, or releases requested by the U.S. Attorney's

14   Office to access records to verify the financial information.

15          d.     Obligations, Authorizations, and Notifications

16   Defendant agrees to truthfully complete the Financial Disclosure Statement

17   that will be provided by the earlier of 30 days from Defendant's signature on this

18   plea agreement or the date of Defendant's entry of a guilty plea, sign it under

19   penalty of perjury, and provide it to both the United States Attorney's Office and

20   the United States Probation Office.  Defendant acknowledges and understands that

21   Defendant's failure to timely and accurately complete and sign the Financial

22   Disclosure Statement, and any update thereto, may, in addition to any other penalty

23   or remedy, constitute Defendant's failure to accept responsibility under U.S.S.G

24   §3E1.1.

25   Defendant expressly authorizes the United States Attorney's Office to obtain

26   a credit report on Defendant upon the signing of this Plea Agreement.  Until

27   Defendant's fine and restitution orders are paid in full, Defendant agrees to provide

28

PLEA AGREEMENT - 16

waivers, consents or releases requested by the United States Attorney's Office to access records to verify the financial information.

Defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before Defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by Defendant, including any interest held or owned under any name, including trusts, partnerships and corporations. Further, pursuant to 18 U.S.C. § 3664(k), Defendant shall notify the court and the United States Attorney's Office within a reasonable period of time, but no later than within 10 days, of any material change in Defendant's economic circumstances that might affect defendant's ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts or any other acquisition of assets or money.

Until Defendant's fine and restitution orders are paid in full, Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Pursuant to 18 U.S.C. § 3612(b)(F), Defendant understands and agrees that until Defendant's fine and restitution orders are paid in full, Defendant must notify the United States Attorney's Office of any change in the mailing address or residence address within 30 days of the change.

15.    Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16.    Additional Violations of Law Can Void Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of

PLEA AGREEMENT - 17

sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17.    <u>Waiver of Appeal Rights</u>

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives all of Defendant's rights to appeal any and all aspects of Defendant's conviction and/or the sentence the Court imposes, on any and all grounds, so long as the Court imposes a term of incarceration consistent with this Rule 11(c)(1)(C) Plea Agreement.  Defendant further expressly agrees that if the Court indicates its intent to impose a sentence higher than the term or range consistent with the Rule 11(c)(1)(C) terms of this Plea Agreement, Defendant has fourteen (14) days from the sentencing hearing to file with the Court a notice of withdrawal from the Rule 11(c)(1)(C) Plea Agreement.  Defendant expressly waives Defendant's right to withdraw from the Rule 11(c)(1)(C) Plea Agreement more than fourteen (14) days after the Court either imposes a sentence higher than the term or range consistent with the Rule 11(c)(1)(C) terms of this Plea Agreement, or indicates its intent to do so.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack

PLEA AGREEMENT - 18

1  upon the conviction or sentence, including, but not limited to, writ of habeas

2  corpus proceedings brought pursuant to 28 U.S.C. § 2255.

3      18.   <u>Withdrawal or Vacatur of Defendant's Plea</u>

4      Should Defendant successfully move to withdraw from this Plea Agreement

5  or should Defendant's conviction be set aside, vacated, reversed, or dismissed

6  under any circumstance, then:

7          a.   Any obligations, commitments, or representations made by the

8              United States in this Plea Agreement shall become null and

9              void;

10          b.   The United States may prosecute Defendant on all available

11              charges;

12          c.   The United States may reinstate any counts that have been

13              dismissed, have been superseded by the filing of another

14              charging instrument, or were not charged because of this Plea

15              Agreement; and

16          d.   The United States may file any new charges that would

17              otherwise be barred by this Plea Agreement.

18      The decision to pursue any or all of these options is solely in the discretion

19  of the United States Attorney's Office.

20      Defendant agrees to waive any objections, motions, and/or defenses

21  Defendant might have to the United States' decisions to seek, reinstate, or reinitiate

22  charges if a count of conviction is withdrawn, set aside, vacated, reversed, or

23  dismissed, including any claim alleging a violation of Double Jeopardy.

24      Defendant agrees not to raise any objections based on the passage of time,

25  including but not limited to alleged violations of any statutes of limitation or any

26  objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth

27  Amendment.

28      19.   <u>Integration Clause</u>

PLEA AGREEMENT - 19

1    The United States and Defendant acknowledge that this document
2  constitutes the entire Plea Agreement between the United States and Defendant,
3  and no other promises, agreements, or conditions exist between the United States
4  and Defendant concerning the resolution of the case.

5    This Plea Agreement is binding only on the United States Attorney's Office
6  for the Eastern District of Washington, and cannot bind other federal, state, or local
7  authorities.

8    The United States and Defendant agree that this Agreement cannot be
9  modified except in a writing that is signed by the United States and Defendant.

10                    Approvals and Signatures

11    Agreed and submitted on behalf of the United States Attorney's Office for
12  the Eastern District of Washington.

13  S. Peter Serrano
    United States Attorney
14

15  _____          12/02/2025
16  Laurel J. Holland                            Date
    Assistant United States Attorney
17

18    I have read this Plea Agreement and I have carefully reviewed and discussed
19  every part of this Plea Agreement with my attorney. I understand the terms of this
    Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and
20  voluntarily. I have consulted with my attorney about my rights, I understand those
21  rights, and I am satisfied with the representation of my attorney in this case. No
22  other promises or inducements have been made to me, other than those contained
23  in this Plea Agreement. No one has threatened or forced me in any way to enter
24  into this Plea Agreement. I agree to plead guilty because I am guilty.
25

26  _____          12-2-25
                                                 Date
27  Victor Martin Lara-Lopez
    Defendant
28

PLEA AGREEMENT - 20

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties.  I concur in my client's decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept Defendant's guilty plea.

_____     10-d-25
Alex B. Hernandez, III                        Date
Attorney for Defendant


Interpreter Certification

I hereby certify that I have read and translated the entire foregoing document to Defendant in a language with which Defendant is conversant.  If questions have arisen, I have notified Defendant's counsel of the questions and have not offered nor given legal advice nor personal opinions.

_____     12/02/25
Written Name:                                   Date
Interpreter

PLEA AGREEMENT - 21